Cite as 2020 Ark. App. 462

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CV-20-337

| | |
|---|---|
| JESSICA SNEED | **Opinion Delivered** October 7, 2020 |
| APPELLANT | |
| | APPEAL FROM THE MADISON |
| V. | COUNTY CIRCUIT COURT |
| | [NO. 44JV-18-69] |
| ARKANSAS DEPARTMENT OF | |
| HUMAN SERVICES AND MINOR | |
| CHILDREN | HONORABLE STACEY |
| APPELLEES | ZIMMERMAN, JUDGE |
| | |
| | AFFIRMED |

## BRANDON J. HARRISON, Judge

The Arkansas Department of Human Services opened this case in 2018 after Jessica Sneed was arrested on an outstanding warrant for public intoxication and child endangerment. There was no caretaker available for her five children—DS, SM1, LM1, SM2, and SM3—when Jessica was arrested. The Madison County Circuit Court adjudicated the children dependent-neglected for three reasons:

- The children needed extensive dental work that would require surgery;
- The children needed counseling, and they had been living in unsafe conditions with their mother; and
- DHS had been involved with providing services to the family since June 2014.

Jessica partially complied with court orders to submit to random drug screenings, complete a psychological evaluation, maintain stable housing and employment, and demonstrate an

ability to protect her children.  But the circuit court ultimately terminated Jessica's parental rights; she appeals.

Jessica does not challenge the statutory grounds that the circuit court used to terminate her parental rights.  She instead argues that the termination of her rights was not in her children's best interest.  Specifically, she says that there was insufficient evidence for the court to conclude that her children were at risk of potential harm if returned to her custody and care.  The circuit found by clear and convincing evidence pursuant to Ark. Code Ann. § 9-27-341(b)(3)(A) (Supp. 2019) that it was in the best interest of the children to terminate Jessica's parental rights.  It concluded that Jessica had not demonstrated the ability to protect the children and keep them safe from harm; that the potential of harm was "too great" to return custody to her; that she had not resolved the issues that caused the children to come into care; and that it was in the children's best interest to have a safe and permanent home.  We hold that the court's decision was not clearly erroneous.  *See Meredith v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 120, at 3, 513 S.W.3d 909, 911 (explaining our standard of review and the requirement that the circuit court's decision must be based on clear and convincing evidence).

We have reviewed the record anew and will highlight some of the facts that came to light during the termination hearing.  After the children had been removed from Jessica's home, a true finding against the oldest child, DS, was entered for sexual abuse of a six-year-old in his foster home.  Seven months into the case, Jessica had not participated in weekly drug screens, had tested positive for alcohol, had not maintained stable housing or employment, had not maintained contact with DHS, and had not completed a psychological

2

evaluation. Almost a year into the case, Jessica still was not submitting to weekly drug-and-alcohol screens but had completed a psychological evaluation, and the court noted that she had made "some progress." When the 2019 permanency-planning order was entered, the court found that "Jessica has not obtained employment, has not submitted to random drug and alcohol screens. Jessica's live in fiancé is a registered sex offender." Jessica remained unemployed throughout the case and was still unemployed at the time of the termination hearing.

A DHS caseworker testified that Jessica's contact with the department and participation in the case had been "very sporadic," that she had missed many drug screenings, and that she had tested positive on a few of the screenings in which she participated. The caseworker stated the following about Jessica.

> She's not made safe choices for her children whenever she's married a registered sex offender, knowing that was a huge concern for the Department, and basically choosing that relationship over her relationship with her children. Her own daughter has made sexual abuse allegations against [DS]. And those allegations were found true but exempt due to his age by CACD. And mom does not believe that those allegations are legitimate. She thinks that [DS][1] did not do them. And so that demonstrates to us that if all the children were to return home that mom, not believing that, is not gonna protect the younger girls and keep them safe from harm. Just poor choices.

Testimony at the termination hearing showed that there had been no progress made with family counseling with Jessica and her four daughters because Jessica would not show up or would cancel the appointment.

Jessica married David Aggers approximately one month before the termination hearing. They had been together as a couple before Jessica's children were removed from

---

[1]DS is male and the oldest child. The younger siblings are female.

her custody. David was convicted in 1998 of interstate receipt of child pornography and there was evidence that he had been classified as "low risk" to reoffend. A sentencing report in the record describes the facts surrounding his conviction. When he testified at the termination hearing, David claimed that beer cans found during a DHS home visit were neither his nor Jessica's and that Jessica's positive alcohol test was not her fault but his. David had custody of his four-year-old daughter that Jessica babysat while he worked as a mechanic and maintenance electrician. Jessica maintained that David's income and their home was large enough to support her and her five children.

Two months before the termination hearing, both Jessica and David underwent psychological evaluations. David did not meet any criteria for the diagnosis of any mental disorder, and the testing results showed a strong positive bias. By Jessica's history and report, she met the criteria for the diagnosis of posttraumatic-stress disorder, but that conclusion was not supported by the testing, possibly because of her positive bias. The psychological examiner noted that Jessica seemed to have low insight and awareness of her own problems and that "[o]f the skills and capacities normally required for parenting, Mrs. Sneed appears to have weakness in unsteady employment, dependency on others for housing, and poor judgment in not paying her fines." The evaluator recommended that Jessica receive individual counseling and that she and David engage in "couples therapy" because "their home will need to be stable and supportive before the children can be returned."

The CASA reports and other evidence in the case describe behavioral changes and struggles of the children after visits with Jessica. The DHS employee supervising Jessica's visits with the children testified about "really chaotic" events during the visits. She said that

Jessica lost track of the four youngest children for what the supervisor considered an unreasonable amount of time, and the supervisor had to enlist the help of the foster parents. By all accounts, the children's behavior had improved and they had benefited from the medical and mental-health treatments received during their time in foster care.

Jessica offered the court various explanations of why she had missed appointments and drug screens. She explained that she has PTSD from a previous abusive relationship and that she has had multiple surgeries. She said that she believed it would be in her daughters' best interest to be placed with her, but it would be in DS's best interest to be placed separately with his uncle or grandmother. These relatives had not yet been vetted as placements as far as the record reveals. Jessica testified that if David Aggers was a danger to her children then she would not let him be around them.

Jessica refused to take many drug screens, had positive drug tests, would not show up to appointments, and did not meaningfully participate in counseling with her children. There were true findings related to these children involving sexual behavior. Jessica indicated that she was comfortable with the children returning home to live with David Aggers, who is a registered sex offender, without any safety plan in place and without Jessica having participated in family counseling. Jessica was completely dependent on David for financial support and had not sustained any employment throughout the case. A professional evaluator concluded that she had little insight into the problem. The circuit court's best-interest finding is not clearly erroneous given the record. We therefore affirm the termination of Jessica's parental rights.

Affirmed.

KLAPPENBACH and HIXSON, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.